UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jeffrey Charles Rodd, | File No. 19-cv-2172 (ECT/KMM) |
| Plaintiff, | |
| v. | |
| K. Crandall, HS Asst.; Dr. Benjamin Rice; PA Ashley Peterson; C. Nickrenz, Warden; Captain J. Feda; and the United States of America, | **OPINION AND ORDER** |
| Defendants.[1] | |

---

Jeffrey Charles Rodd, *pro se*.

Andrew Tweeten and Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Defendants.

---

Pro se Plaintiff Jeffrey Charles Rodd alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights and that they committed medical malpractice and negligence by failing to provide proper treatment for

---

[1] On August 8, 2019, the same day that Rodd filed a handwritten complaint, he also filed a typed document that appears to be, in essence, a restatement of his complaint and supplemental memorandum. ECF No. 7. Rodd filed that document again on November 15, 2019. ECF No. 15. In that document, Rodd lists a sixth defendant in the case caption who is not named in the caption of his handwritten complaint, "Lt. Commander Hopper." Hopper has not been added as a party to this action or served with the complaint, and the Government does not purport to represent Hopper. *See* Notice of Appearance [ECF No. 26]; Defs.' Mem. in Supp. at 1 [ECF No. 48]. Rodd mentions Hopper in the substance of both documents only once, stating that he reported his pain and injuries to Hopper "many times." ECF No. 1 at 5 ¶ E; ECF Nos. 7, 15 at 7–8. If Rodd had named and served Hopper as a defendant in this action, his claims against Hopper would be dismissed for the same reasons described below.

various medical conditions while he was incarcerated by the Bureau of Prisons ("BOP").[2] Defendants have filed a motion to dismiss or, alternatively, for summary judgment of Rodd's claims, ECF No. 46, and their motion will be granted.

I

The majority of Rodd's allegations concern an incident that occurred while he was housed at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). On the evening of November 5, 2014, Rodd was attending a class in the education building. ECF No. 1 at 2 ¶ A; ECF No. 7 at 1 ¶ 1.[3] While Rodd was being pushed in a wheelchair by the instructor down a loading ramp, the wheelchair hit a pothole and Rodd fell onto the ground. *Id.* Rodd sustained a number of injuries, including abrasions to his left arm, elbow, and knee, a "twisted" and swollen left foot, and a loose upper front tooth. ECF No. 1 at 3 ¶ A; ECF No. 7 at 2 ¶ 2. Rodd alleges that he had an INR[4] test to evaluate blood clotting earlier that day with poor results and that he bled profusely after the accident. ECF No. 7 at 2 ¶ 2; *see* ECF No. 1-2 at 6.

---

[2]  Rodd was released from prison on November 20, 2020. *See Find an Inmate*, Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited Aug. 24, 2021).

[3]  The relevant facts are taken from Rodd's handwritten complaint [ECF No. 1] and typed supplemental document [ECF No. 7], which were filed on the same day and will be construed together as the operative pleading.

[4]  An INR, or international normalized ratio, is a measure of "how long it takes for a clot to form in a blood sample." *Prothombin Time Test and INR (PT/INR)*, MedlinePlus, https://medlineplus.gov/lab-tests/prothrombin-time-test-and-inr-ptinr/ (last visited Aug. 24, 2021).

Rodd reported the accident and his injuries to Defendant Ashley Peterson the next day. ECF No. 1-2 at 7–8. Peterson examined Rodd and noted the abrasions as well as swelling, bruising, and pain in Rodd's left foot. *Id.* at 8. Peterson ordered an x-ray of Rodd's left ankle and foot and instructed Rodd to keep the abrasions clean and continue wound care. *Id.* at 8–9. Rodd complains that Peterson did not include his damaged tooth in her report. ECF No. 1 at 3 ¶ A; ECF No. 7 at 2 ¶ 3; *see* ECF No. 1-2 at 7–9. Defendant Dr. Benjamin Rice also examined Rodd and told him that they would "at some point[] need to get him out of [the] wheel chair." ECF No. 1-2 at 9. Rodd requested physical therapy for his injuries, but Defendant Kraig Crandall denied his request. *Id.* at 2. According to Rodd, he "reported to the medical office almost daily" and "constantly report[ed] [his] foot pain [and] knee pain to" Peterson and Dr. Rice. ECF No. 1 at 4 ¶ D; ECF No. 7 at 7. Rodd alleges that his "request for physical therapy or relief went unanswered" and that he was given "a basic bandage for [his] damaged knee cap." ECF No. 1 at 5 ¶ D; ECF No. 7 at 7. Rodd later requested additional wound care, but Crandall denied that request in December 2014 on the basis that Rodd would be "[t]ransferring to [a] BOP [i]npatient bed." ECF No. 1-2 at 5.

Rodd was transferred to the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"), on January 13, 2015. ECF No. 1 at 5 ¶ E; ECF No. 7 at 2 ¶ 5. Rodd alleges that he reported the wheelchair accident and a separate incident in which his eyes had frozen shut "upon arrival at the FMC" and that he further reported his injuries and continuing pain "many many times" to Defendant Jessica Feda and Hopper, *see supra* note 1, both physical therapists. ECF No. 1 at 5 ¶ E; ECF No. 7 at 7. Rodd also alleges that his

3

left front tooth came out two days after his arrival at FMC-Rochester, "causing [him] to have a lisp." ECF No. 7 at 2 ¶ 5. According to Rodd, he had "many physical therapy treatments" but "remained mostly in a wheelchair" while at FMC-Rochester due to "the poor balance [he] had from [his] injuries and then from going blind." ECF No. 1 at 5 ¶ E; ECF No. 7 at 2 ¶ 7. Rodd alleges that he was given acetaminophen daily and "listed as Chronic pain and Chronic Care, but never received any treatment for the pain or [his] injuries." ECF No. 7 at 8.

In September 2015, Rodd was transferred to the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"). ECF No. 1 at 6 ¶ F. While there he "still had a great deal of pain in [his] left foot and knee" but "walked without a wheelchair" for the first time since coming into the BOP in September 2014. *Id.* Rodd also had monthly physical therapy appointments. *Id.* However, Rodd alleges that he asked for an x-ray of his left knee "at least 20 times" until one was ordered, which showed "an 8mm calcified bone spur." *Id.*; *see* ECF No. 1-2 at 10 (x-ray report from February 22, 2019). Rodd states that he has a permanent scar on his left knee and tissue damage to his left foot and knee, that his foot "remains deformed or bent to the left," and that he is "on acetaminophen for chronic pain" and "walk[s] with a cane." ECF No. 1 at 5 ¶ E; ECF No. 7 at 2 ¶ 4.

Rodd's other allegations concern the overall treatment of his chronic medical conditions while in BOP custody. Rodd alleges that it was "an abuse of discretion by B.O.P. Administrators when he was sent to a non-handicapped facility instead of the Federal Medical Center" and that his rights "under the Fifth and Fourteenth Amendments" pertaining to the "protection of a prisoner's life and health" were violated. ECF No. 1 at

6 ¶ G; ECF No. 7 at 3 ¶¶ 9–10.  Rodd alleges that when he arrived at FPC-Duluth, he explained to Dr. Rice that he "had been treated for 26 medical issues and [] was suppose[d] to have been sent to a Federal Medical Center."  ECF No. 1 at 3 ¶ A; *see* ECF No. 1-2 at 3–4.  Rodd further alleges that he informed Dr. Rice that he was supposed to be on two medications to treat atrial fibrillation but that Dr. Rice did not "listen to [his] medical history" and refused to prescribe the medications, which resulted in a four-day hospital stay from October 31 to November 3, 2014.  ECF No. 1 at 3 ¶ A, 4 ¶ B; *see* ECF No. 1-2 at 1.  Rodd also alleges that because Defendant Christopher Nickrenz is the warden of FPC-Duluth and "oversees the complete administration of the medical staff, grounds, housing, safety, etc." he "should also be held responsible."  ECF No. 1 at 6–7 ¶ G.  With respect to both the injuries he sustained in the wheelchair accident and his chronic medical conditions, Rodd alleges that Defendants' actions amounted to deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  *Id.* at 4 ¶ B, 5 ¶¶ D, E, 7 ¶ G; ECF No. 7 at 3 ¶ 12, 7–8.

II

Defendants argue that Rodd's *Bivens* claims against them cannot proceed because he has not exhausted his administrative remedies within the BOP.[5]  Defs.' Mem. in Supp. at 7–11 [ECF No. 48]; *see Bivens v. Six Unknown Named Agents of Fed. Bureau of*

---

[5]    Rodd does not identify any specific legal claim in his handwritten complaint, but in his typed supplemental document, he cites *Bivens* and lists a single count in which he asserts Defendants "were deliberately indifferent to [his] serious medical needs and committed malpractice/negligence."  ECF No. 7 at 1, 7; *see id.* at 3–6.  Construing his pleadings liberally as required, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), Rodd is understood to present both *Bivens* and Federal Tort Claims Act ("FTCA") claims.

*Narcotics*, 403 U.S. 388 (1971).  Under the Prison Litigation Reform Act ("PLRA"), exhaustion of available administrative remedies is mandatory.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").[6]  However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  "[F]ailure to exhaust is an affirmative defense under the PLRA" that a defendant has the burden to plead and prove.  *Id.*; *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *see Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) (explaining the PLRA's exhaustion requirement is "not a matter of subject matter jurisdiction").

A

Defendants have moved to dismiss Rodd's claims under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56.  ECF No. 46.  "[A]ffirmative defenses are generally not a basis for a motion to dismiss under 12(b)(6)" unless "the complaint *clearly* shows the existence [of] a defense."  *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1118 (D. Minn. 2010) (internal quotation marks and citations omitted). Here, Rodd's pleading does not mention exhaustion one way or the other, and it would be

---

[6] Although Rodd is no longer incarcerated, "[i]t is the status of the individual at the time of filing suit that determines whether the individual is a 'prisoner' for purposes of § 1997e."  *Turner v. Watson*, 821 F. App'x 669, 670 (8th Cir. 2020) (citing *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (per curiam)).  Accordingly, Rodd remains subject to the PLRA's exhaustion requirement because he was incarcerated when he filed his complaint.

incorrect to find the absence of exhaustion from the absence of allegations concerning exhaustion, at least when Rodd had no burden to plead it.

Defendants' contention that Rodd did not exhaust his administrative remedies with respect to his *Bivens* claims is based on evidence in the record. In support of their motion, Defendants filed the declaration of a Paralegal Specialist for the BOP, Shannon Boldt, and eight accompanying exhibits. ECF Nos. 49, 49-1–49-8. Boldt's declaration and the attached exhibits are "matters outside the pleadings." Fed. R. Civ. P. 12(d). They are not among the categories of documents embraced by the pleadings. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." (internal quotation marks and citation omitted)). Considering these materials in resolving Defendants' motion therefore requires treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

When converting a motion to dismiss to one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "[A] party against whom this procedure is used . . . is normally entitled to notice," actual or constructive, "that conversion is occurring." *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1005 (8th Cir. 2000). Nonetheless, "[c]onsideration of matters outside the pleadings is harmless where the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record." *Van Zee v. Hanson*, 630 F.3d 1126, 1129 (8th Cir.

7

2011) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003)). Here, Defendants expressly characterized their motion as one for dismissal or summary judgment. Rodd had an adequate opportunity to—and did—respond to the motion. *See generally* Pl.'s Mem. in Opp'n [ECF No. 54]. In his response memorandum, Rodd does not dispute Defendants' assertion that he failed to exhaust his administrative remedies or contest any of the evidence presented by Defendants. He also does not seek discovery with respect to the issue of administrative exhaustion. Rather, Rodd contends that he should be excused from the exhaustion requirement and that his case should proceed to discovery on the merits of his claims. *Id.* at 1–2, 5. The documents submitted by Defendants do not suggest the existence of other evidence not in the record relevant to determining whether Rodd satisfied the PLRA's exhaustion requirement or appear otherwise incomplete. Accordingly, it is appropriate under these circumstances to treat Defendants' motion as one for summary judgment. *See, e.g.*, *Spencer v. U.S. Bureau of Prisons*, No. 20-cv-1236 (NEB/KMM), 2021 WL 3426049, at *2–3 (D. Minn. June 1, 2021), *report and recommendation adopted*, 2021 WL 3422397 (D. Minn. Aug. 5, 2021); *Schuett v. LaRiva*, No. 15-cv-4207 (WMW/SER), 2017 WL 123427, at *2–3 (D. Minn. Jan. 12, 2017).

B

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is

8

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

A prisoner must exhaust available administrative remedies before filing suit under federal law with respect to prison conditions. 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001) (footnote omitted). To satisfy the requirement, a prisoner must comply with the grievance procedures of the prison where he is incarcerated. *Jones*, 549 U.S. at 218.

The BOP has a four-step administrative grievance procedure. *See* 28 C.F.R. §§ 542.10–.19; Boldt Decl. ¶¶ 5–6. First, an inmate must bring the issue to prison staff who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a); *see* Boldt Decl. ¶ 7. If the inmate is unable to informally resolve a complaint, he must file a "formal written Administrative Remedy Request." 28 C.F.R. § 542.14(a); *see* Boldt Decl. ¶ 7. If the warden denies the request, the inmate must appeal the denial to "the appropriate [BOP] Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a); *see* Boldt Decl. ¶ 7. Finally, if that appeal is denied, the inmate must appeal to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a); *see* Boldt Decl. ¶ 7.

"Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a). "An inmate has not exhausted [his] remedies until [he] has sought review at all levels of the process." Boldt Decl. ¶ 8.

Rodd concedes that he did not exhaust the administrative review process before filing this action. *See* Pl.'s Mem. in Opp'n at 1. Though Rodd alleges he complained about his medical conditions informally to prison staff on many occasions, he did not follow the formal administrative grievance procedure. Indeed, the records submitted by Defendants confirm that Rodd "did not file any administrative remedies during his incarceration with the Bureau of Prisons." Boldt Decl. ¶ 13, Ex. B. Instead, Rodd argues that he should be excused from the exhaustion requirement "because he was physically incapacitated at the time he was required to file them due to him being completely blind after having his eyes froze[n] at Duluth Camp in Minnesota." Pl.'s Mem. in Opp'n at 1–2.

There is no exception to the PLRA's exhaustion requirement for "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1856–58 (2016). The lone qualifier is that a prisoner need only exhaust those remedies which are "available." *Id.* at 1858–60. An administrative procedure is unavailable "(1) when the procedure would be a 'dead end' because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become 'incapable of use'; and (3) when prison officials prevent a prisoner from utilizing the procedure through 'machination, misrepresentation, or intimidation.'" *Rodd v. LaRiva*, 515 F. Supp. 3d 1006, 1012 (D. Minn. 2021) (quoting *Ross*, 136 S. Ct. at 1859–60). Rodd does not assert that administrative remedy procedures were unavailable for any of these three reasons, and nothing in the record suggests any genuine dispute of

10

material fact on this issue. Even if the law allowed for consideration of special circumstances, Rodd's blindness would not excuse his noncompliance with the exhaustion requirement. The BOP's administrative grievance procedure explicitly provides that an inmate may obtain assistance from other inmates, institution staff, and outside sources, such as family members or attorneys, to prepare a request or appeal. 28 C.F.R. § 542.16(a). Additionally, wardens must "ensure that assistance is available for inmates who are . . . disabled," including "provision of reasonable accommodation in order for an inmate with a disability to prepare and process" a request or appeal. *Id.* § 542.16(b). Because Rodd did not exhaust all available administrative remedies before filing suit, Defendants are entitled to summary judgment with respect to Rodd's deliberate-indifference claims.

### III

### A

To the extent that Rodd asserts claims under the FTCA, Defendants argue that those claims cannot proceed because they are untimely. Defs.' Mem. in Supp. at 11–14. The FTCA allows an individual injured by the negligent acts or omissions of a federal government employee acting within the scope of his or her office or employment to bring a claim against the United States. 28 U.S.C. § 2679(b)(1); *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 671–72 (8th Cir. 2008) (citing 28 U.S.C. § 1346(b)). Before filing suit, "the [injured] claimant . . . [must] first present[] the claim to the appropriate Federal agency" and obtain a "final denial" of that claim by the agency. 28 U.S.C. § 2675(a). This presentment requirement "provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or

settle FTCA claims prior to suit." *Mader v. United States*, 654 F.3d 794, 800–01 (8th Cir. 2011) (en banc) (citation omitted). To provide federal agencies with that "fair opportunity," the claimant must give notice of the underlying incident in writing, with sufficient information for the agency to investigate, and indicate the amount of damages sought. *Id.* at 800, 803–04 (citing 28 C.F.R. § 14.2(a)). An FTCA plaintiff bears the burden of pleading and proving complete exhaustion of administrative remedies; without exhaustion according to these requirements, a federal court does not have subject-matter jurisdiction to consider the claim. *McNeil v. United States*, 508 U.S. 106, 112 (1993) ("The most natural reading of [§ 2675(a)] indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."); *Barber v. Simpson*, 94 F.3d 648, at *2 (8th Cir. 1996) (per curiam) (citations omitted) (unpublished table decision) (reaffirming that FTCA presentment requirement is jurisdictional); *Bryant v. Dep't of Army*, 553 F. Supp. 2d 1098, 1104 (D. Minn. 2008) ("Presentment of an administrative claim [under the FTCA] is jurisdictional. . . . The plaintiff has the burden of pleading and proving that he has satisfied the presentment requirement." (citing *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993))).

Rodd does not allege complete exhaustion of his administrative remedies with respect to any tort claims in his pleadings. *See generally* ECF Nos. 1, 7. Ordinarily, this would mean his tort claims must be dismissed for lack of subject-matter jurisdiction. Here, there is a twist. Though it was not their burden, Defendants have submitted evidence that Rodd presented a claim to the BOP on February 5, 2018, concerning the wheelchair

12

accident and his resulting medical conditions.[7]  Boldt Decl. ¶¶ 15–16, Exs. C, D.  Rodd obtained a final denial of that claim from the BOP on March 21, 2018.  *Id.*, Ex. D at 15.  Defendants do not challenge the sufficiency of this presentment, only its timeliness.  Accordingly, Rodd will be deemed to have satisfied the presentment requirement for jurisdictional purposes.  *See United States v. Wong*, 575 U.S. 402, 420 (2015) (holding the FTCA's time limitations are non-jurisdictional).

B

Presentment of an administrative tort claim must occur "within two years after such claim accrues." 28 U.S.C. § 2401(b).  There is no dispute that Rodd filed his administrative tort claim with the BOP more than two years after the November 5, 2014 incident.  Nonetheless, Rodd asserts that his claim is not time-barred because he experienced "continuing violation[s]," as demonstrated by his chronic pain.  ECF No. 7 at 2–3 ¶¶ 8, 11 and at 5–6.  "Under the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987).  In his administrative tort claim, Rodd complained not only about his injuries from the wheelchair accident and treatment in the following months but also that the "medical needs [he] require[s] ha[d] not been addressed."  Boldt Decl., Ex. D at 3.  Likewise, Rodd's factual allegations in this case at least plausibly suggest the possible

---

[7]  BOP records show that Rodd submitted five administrative tort claims while incarcerated, only one of which is directly relevant to Rodd's claims in this case.  *See* Boldt Decl. ¶¶ 15–20, Exs. C–H.

13

existence of a factual dispute with respect to whether the treatment he complains of extended past February 5, 2016.

Assuming Rodd's FTCA claims are not barred by the two-year limitations period for presentment, Defendants argue that Rodd's filing of this action also was untimely. The FTCA bars tort claims against the United States "unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it is presented." 28 U.S.C. § 2401(b).[8] Again, there is no dispute that Rodd commenced this action more than six months after the final denial of his administrative tort claim on March 21, 2018. *See* ECF No. 1 (showing Rodd commenced this action on August 8, 2019).

The continuing treatment doctrine is not applicable with respect to this requirement. It "dictates only the point in time a cause of action accrues," and "[t]he requirement to file a suit within six months of a denial of an administrative tort claim bears no relation to the time when a cause of action accrues." *LaRiva*, 515 F. Supp. 3d at 1014 (citing *Wehrman*, 830 F.2d at 1483). Therefore, the "continuing violation[s]" Rodd alleges cannot excuse his failure to commence this suit within six months of the BOP's denial of his administrative tort claim.

---

[8] Although the two-year presentment and six-month filing requirements in § 2401(b) are phrased in the disjunctive, a majority of the circuit courts of appeals, and all who have addressed the issue, have held that "[b]oth conditions must be satisfied in order for a plaintiff to properly bring a claim under the FTCA." *Sconiers v. United States*, 896 F.3d 595, 598 (3d Cir. 2018) (collecting cases); *see also Mone v. United States*, 766 F. App'x 979, 984 & n.2 (Fed. Cir. 2019) (collecting cases). The Eighth Circuit has not expressly commented on the issue but has implicitly followed this rule. *See, e.g., Kelly-Leppert v. United States*, 787 F. App'x 359 (8th Cir. 2019) (citing *Sconiers*, 896 F.3d at 598–99).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss or for Summary Judgment [ECF No. 46] is **GRANTED**;

2. Plaintiff's Motion in Opposition of Defendants' Motion to Dismiss or for Summary Judgment [ECF No. 54] is **DENIED**;

3. Rodd's *Bivens* claims are **DISMISSED without prejudice**;[9] and

4. Rodd's FTCA claims are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 24, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court

---

[9] *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000); *Brown v. Cooper*, 787 F. App'x 366, 367 (8th Cir. 2019) (per curiam); *Fargas v. United States*, 334 F. App'x 40, 40–41 (8th Cir. 2009) (per curiam).